```
             IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION
```

**BEVERLY S. STONEROCK,**

       **Plaintiff,**

   **vs.**                              **Civil Action 2:07-CV-1027**
                                          **Judge Marbley**
                                          **Magistrate Judge King**

**TEAYS VALLEY LOCAL SCHOOL**
**DISTRICT,** *et al.***,**

       **Defendants.**


<u>**OPINION AND ORDER**</u>

    This is an employment action in which plaintiff alleges that the termination of her employment was made in violation of the Family and Medical Leave Act ("FMLA") and in retaliation for plaintiff having exercised her rights under the FMLA, 29 U.S.C. § 2601 *et seq.*[1]  This matter is before the Court on *Plaintiff Beverly S. Stonerock's Motion to Compel Disclosure of Former Counsel's Advice on Defendant's Discharge Notification Letter to Plaintiff*, Doc. No. 17 ("*Motion to Compel*").  For the reasons that follow, the *Motion to Compel* is **DENIED**.[2]


**I.    BACKGROUND**

---

[1] Plaintiff's claim under the Employment Retirement Income Security Act, 29 U.S.C. § 1132 *et seq.*, has been voluntarily dismissed without prejudice.  *See* Doc. No. 6.

[2] Because the Court is able to resolve this matter on the briefs and materials submitted to the Court, defendants' request for oral argument, *Reply to Plaintiff's Response in Support of Motion to Compel Oral Argument Requested*, Doc. No. 20 ("*Surreply*"), is **DENIED.**

**A. Termination of Plaintiff's Employment**

In August 1997, plaintiff was initially hired as a bus driver for the defendant school district. *Complaint*, No. 2, ¶ 5. Beginning in November 1999, plaintiff worked as custodian until her termination on March 26, 2007. *Id*. While employed, plaintiff took leave under the FMLA on several occasions. *Id*. at ¶ 6.

On March 20, 2007, the District Superintendent, Jeff Sheets, advised plaintiff that he was recommending to the Teays Valley Board of Education ("the Board") that she be terminated. *Id*. at ¶ 22; Exhibit B ("the letter"), attached to *Motion to Compel*. Superintendent Sheets stated that he based his recommendation on three factors:

1. Although warnings have been issued from principal, Kyle Wolfe, your attendance has continued to be unsatisfactory. You have been absent from work for 30 or more days in each of the past 3 contract years. You have exhausted all leave, yet still are absent from work repeatedly.

2. Video surveillance[3] indicates that you improperly escorted unwelcome visitors into the building on at least one occasion. This surveillance indicates that these visitors removed items that were not theirs on school property.

3. You have been dishonest in your report to the Ashville Police by reporting that your son was not in the building during the evening of March 19th,[4] when in fact he was.

Exhibit B.

Superintendent Sheets further advised plaintiff that she could

---

[3]The Teays Valley Middle School ("the middle school") has installed several video cameras in the school building. *Deposition of Jeff Sheets*, p. 34 ("*Sheets Depo.*"), attached as Exhibit A to *Motion to Compel*. The cameras are not hidden in any way; staff and students know that the cameras are in place. *Id*. at 34-35.

[4]Defendants have a copy of the video recording (lasting one hour and twenty minutes) from this day. *Sheets Depo.*, pp. 16, 35-36.

2

appear at a Board meeting on March 26, 2007, to respond to the proposed dismissal. *Id*. The Board would deem a failure to appear as a waiver of the right to a hearing, and would base its decision on the evidence provided by the administration. *Id*. Effective March 20, 2007, plaintiff was suspended without pay and was asked to return her building keys. *Id*.

On March 23, 2007, plaintiff's counsel contacted Superintendent Sheets regarding plaintiff's employment. *Affidavit of Steven D. Dransfield*, ¶ 3 ("*Dransfield Aff.*"), attached as Exhibit C to *Motion to Compel*. On March 26, 2007, counsel for both parties discussed the letter dated March 20, 2007. *Id*. at ¶ 4. According to plaintiff's counsel, defendants' counsel believed that the FMLA would not be violated if the Board did not mention plaintiff's absences as a basis for her termination. *Id*. at ¶ 6.

On March 26, 2007, the Board met to consider the allegations against plaintiff. *Complaint*, ¶ 26. Present at the meeting, in addition to the members of the Board, were plaintiff, her husband, Superintendent Sheets, the assistant superintendent, the treasurer of the school district and the middle school principal, Kyle Wolfe. *Sheets Depo.*, pp. 52-54. Mr. Wolfe and Superintendent Sheets presented plaintiff's "situation" to the Board.[5] *Sheets Depo.*, pp. 14-15, 48. Superintendent Sheets made no mention of plaintiff's attendance[6] and the FMLA was not mentioned. *Id*. at 54, 93. The video

---

[5] Neither party filed a copy of the meeting minutes, agenda or Superintendent Sheets's summary of the meeting. *Sheets Depo.*, pp. 48-49, 87.

[6] Superintendent Sheets does not recall if Mr. Wolfe mentioned plaintiff's poor attendance record at the Board meeting. *Sheets Depo.*, pp. 54-55.

tape from March 19, 2007, showing plaintiff escorting unwelcome visitors into the school was played, but the letter was not circulated. *Id*. at 16, 64. Following this executive session, the Board decided to terminate plaintiff's employment "due to allegations that she had, on March 19, 2007, 'escorted unwelcome visitors into the [school] building.'" *Complaint*, ¶ 26; *Sheets Depo.*, p. 53.

**B.  The Instant Litigation**

On October 9, 2007, plaintiff filed the *Complaint*. *Id*. Plaintiff alleges that defendants (1) terminated her employment in retaliation for exercising her rights under the FMLA, and (2) interfered with her rights under the FMLA. *Id*. at ¶¶ 49-54.

During the course of discovery, Superintendent Sheets was questioned about what role plaintiff's attendance record played in the decision to terminate her employment:

> Q:  All right.  Now, if I understand your testimony, your recommendation for termination had nothing to do with her attendance; right?
>
> A:  Correct.
>
> Q:  Why did you say that it was part of your recommendation in a letter to me [counsel]?
>
> A:  On advise [sic] of counsel at the time.
>
> \*          \*          \*          \*
>
> Q:  Going back to your letter, the Exhibit F, March 20th, 2007, you said the reason her attendance appears in this letter was advice of counsel?
>
> A:  Correct.
>
> \*          \*          \*          \*

4

> Q: Was this letter [dated March 20, 2007] circulated or did it appear in any way at the Board meeting in which Mrs. Stonerock was terminated?
>
> A: No.
>
> Q: Why not? Why didn't you bring the letter that you had given to Mrs. Stonerock?
>
> A: Because I chose that attendance wasn't an issue in this termination.

*Sheets Depo.*, pp. 56, 61, 64-65.

Superintendent Sheets was also questioned about his discussions regarding the FMLA in the context of the termination of plaintiff's employment:

> Q: . . . Did Mr. Ross [former counsel for defendants] inform you that he had a conversation with Mr. Dransfield [plaintiff's former counsel] about the Family Medical Leave Act and the allegations that Mrs. Stonerock's-- that the school district may be violating Mrs. Stonerock's rights under the Family Leave Medical Act [sic]?
>
> MS.PETRO: Objection.
>
> Q: You are not going to answer that question on advise [sic] of counsel?
>
> A. Correct.
>
> Q: Did Mr. Ross inform you that as long as the Board of Education did not mention Mrs. Stonerock's absence as a basis, that would establish a legitimate basis and the school district would prevail in litigation? Did you have that conversation with Mr. Ross?
>
> MS.PETRO: Objection.
>
> Q: And you are not going to answer that question based on the advice of counsel?
>
> A: Correct.

*Sheets Depo.*, pp. 90-91.

In addition to deposing Superintendent Sheets, plaintiff asked

defendants for a copy of her entire personnel file. *Dransfield Aff.*, ¶¶ 7-10. Upon receipt and review of this file, plaintiff realized that the file did not contain the letter dated March 20, 2007. *Id*. at ¶ 11. Superintendent Sheets agreed that the letter should have been placed in her personnel file in the normal course of business. *Sheets Depo.*, pp. 89-90. He knew of no reason why the letter was not in her file. *Id*. at 90.

### C. *Motion to Compel*

Subsequently, the parties communicated regarding defendants' former counsel's advice and the assertion of the attorney-client privilege. *Affidavit of John S. Marshall*, ¶¶ 1-4 ("*Marshall Aff.*"), attached as Exhibit D to the *Motion to Compel*. Unable to resolve their dispute, plaintiff filed the *Motion to Compel*, seeking to compel defendants to answer questions about their former counsel's advice to Superintendent Sheets regarding the letter dated March 20, 2007. Plaintiff argues that a central issue is whether defendants acted with pretext by terminating her employment purportedly based on her March 19, 2007, activity. *Motion to Compel*, p. 2. Plaintiff contends that it is therefore critical to discover the meaning and role of the statement about her attendance in the letter, particularly where the "incriminating" letter has been "removed" from plaintiff's personnel file. *Id*. at 2-4. Plaintiff further argues that defendants waived the attorney-client privilege when Superintendent Sheets responded that "advice of counsel explained why he wrote the incriminating statement and how it can be reconciled with his statement that attendance played no part in the Board's decision." *Id*. at 6.

6

In response, defendants contend that the statement in the letter dated March 20, 2007, regarding plaintiff's attendance, is a "red herring," which, as even plaintiff acknowledges, did not serve as the articulated basis for the termination of plaintiff's employment. *Memorandum of Defendants Teays Valley Local School District and Board of Education Contra Plaintiff's Motion to Compel*, p. 2, 7-8 ("*Memo. Contra*"). Defendants argue that plaintiff's waiver argument is equally meritless because defendants are not defending themselves by asserting that they relied on defense of counsel; "[t]he Board's defense is that it terminated Plaintiff for legitimate business reasons." *Id*. at 5-8. Therefore, the assertion of the attorney-client privilege is irrelevant to any claim or defense in this case. *Id*.

In reply, plaintiff argues that the conduct of Superintendent Sheets is critical pretextual evidence because it is evidence of "FMLA animus" and such animus may be imputed to the Board that made the ultimate decision to terminate plaintiff's employment. *Plaintiff's Response to Defendant's Memorandum Contra to Plaintiff's Motion to Compel*, Doc. No. 19, pp. 1-2 ("*Reply*"). Plaintiff also contends that she may demonstrate pretext by showing what more likely motivated Defendants, *i.e.*, FMLA animus. *Id*. at 2-4. Plaintiff insists that defendants waived the attorney-client privilege by asserting the privilege as a defense to plaintiff's pretext attack. *Id*. at 3-5.

**II. STANDARD**

"The attorney-client privilege protects from disclosure 'confidential communications between a lawyer and his client in matters that relate to the legal interests of society and the

7

client.'"  *Ross v. City of Memphis*, 423 F.3d 596, 600 (6th Cir. 2005) (quoting *In re Grand Jury Subpoena (United States v. Doe)*, 886 F.2d 135, 137 (6th Cir. 1989)).

> The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law.  Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.

*Upjohn v. United States*, 449 U.S. 383, 389 (1981) (citing 8 J. Wigmore, Evidence § 2290 (McNaughton rev. 1961)).

The Rules of Civil Procedure emphasize that privileged material, even if relevant, falls outside the scope of permissible discovery. *In re Lott*, 424 F.3d 446, 452 (6th Cir. 2002) (citing Fed. R. Civ. P. 26(b)(1)).  However, a party may waive the attorney-client privilege by express action or by implication.  *Id*. at 452.  Courts narrowly construe implied waivers.  *Id*. at 453.

The privilege is implicitly waived when the party "'places at issue the subject matter of a privileged communication in such a way that the party holding the privilege will be forced to draw upon the privileged material at trial in order to prevail.'"  *Id*. (quoting *Developments in the Law-Privileged Communications, Implied Waiver*, 98 Harv. L. Rev. 1629, 1638 (1985)).  *See also United States v. Ohio Edison Co.*, No. C2-99-1181, 2002 U.S. Dist. LEXIS 14290, at *16 (S.D. Ohio July 11, 2002) ("'Relevancy is not the test for an implicit waiver of attorney-client privilege.") (citing *United States v. Zolin*, 491 U.S. 554, 562-63(1989)).  Thus, "[t]he attorney-client privilege is generally waived when the client asserts claims or defenses that put his attorney's advice at issue in the litigation. *Garcia v.

8

*Zenith Elec. Corp.*, 58 F.3d 1171, 1175 (7th Cir. 1995) (cited with approval in *In re Lott*, 424 F.3d at 453). *See also U.S. Fire Ins. Co. v. Asbestospray, Inc.*, 182 F.3d 201, 212 (3d Cir. 1999) (stating that waiver occurs when the party "has made the decision and taken the affirmative step in the litigation to place the advice of the attorney at in issue") (cited with approval in *In re Lott*, 424 F.3d at 453). However, "'[w]aiver is not likely to be found when the statements alleged to constitute waiver do not disclose the contents of a specific communication between client and attorney.'" *Denman v. Youngstown State Univ.*, No. 4:05CV 1910, 2007 U.S. Dist. LEXIS 70090, at *17 (N.D. Ohio Sept. 21, 2007) (quoting *Genentech, Inc. v. Insmed, Inc.*, 236 F.R.D. 466, 469 (N.D. Cal. June 30, 2006)).

### III. DISCUSSION

As discussed *supra*, the parties disagree on whether Superintendent Sheets's invocation of the attorney-client privilege is relevant to the issue of pretext and, therefore, resulted in an implicit waiver of the privilege. In the context of employment cases resting on circumstantial evidence, courts analyze claims under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and refined in *Texas Dep't of Cmty Affairs v. Burdine*, 450 U.S. 248 (1981). Under the *McDonnell Douglas* framework, a plaintiff must first establish a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. Once the plaintiff has met this initial burden, the burden of production shifts to the employer "to articulate some legitimate, nondiscriminatory

reason for the employee's rejection." *Id*. at 802.  If the defendant employer satisfies its burden, the plaintiff must then show not only that defendant's articulated reason was a pretext, but that the real reason was discrimination.  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993).  *See also Gembus v. MetroHealth Sys.*, No. 07-3542, 2008 U.S. App. LEXIS 18554, at *10 (6th Cir. Aug. 27, 2008) ("In order to meet her burden, [plaintiff] Gembus must show both that [defendant] MetroHealth's stated reason for her termination was false and that discrimination was MetroHealth's motivation for her discharge.").  The plaintiff may establish pretext "by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct."  *Dews v. A.B. Dick. Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000) (citing *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)).  *See also Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003) (quoting *Dews*, 231 F.3d at 1021)).

Plaintiff contends that "the defense to Ms. Stonerock's attack of pretext is advice of counsel."  *Reply*, p. 4.  As an initial matter, the Court agrees with defendants that the three-part *McDonnell Douglas* framework does not provide for a defense to pretext.  *Surreply*, pp. 3-4.  Instead, once plaintiff has established a *prima facie* case of discrimination, defendants' must merely provide a legitimate, non-discriminatory reason for their action.  *McDonnell Douglas*, 411 U.S. at 802.  Therefore, plaintiff has not shown that the assertion of a cognizable defense placed privileged communications at issue in this litigation.  Accordingly, to the extent that plaintiff moves to compel

10

privileged communications based on a defense to pretext, plaintiff's argument is without merit.

Plaintiff also argues that defendants' assertion of privilege prevents plaintiff from establishing her claim of pretext. *Motion to Compel*, p. 1; *Reply*, p. 4. This Court disagrees. As defendants point out, plaintiff has the letter and its alleged evidence of incriminating statements. Preventing plaintiff from discovering otherwise privileged communication between Superintendent Sheets and his counsel about *why* he included such statements in his letter, *Motion to Compel*, p. 3, does not prevent plaintiff from using the letter in this action. If she chooses, plaintiff may use the letter's content to argue that the statements evidence unlawful intent and that they should be imputed to the Board, which ultimately decided to discharge plaintiff. In response, defendants may argue (as they have) that Superintendent Sheets did not actually rely upon plaintiff's absences when recommending her discharge, that he did not share the letter's "incriminating statements" to the Board, and that the Board did not consider plaintiff's absences in deciding to terminate her employment. There is therefore no evidence presently before the Court that "the party holding the privilege," *i.e.*, defendants, "will be forced to draw upon the privileged material at trial in order to prevail." *In re Lott*, 424 F.3d at 453.[7] Construing, as it must, implied waiver narrowly, *id.*, the Court concludes that defendants have not put their attorney's advice at issue in this litigation.

---

[7]Moreover, the Court is not persuaded that Superintendent Sheets disclosed the contents of a specific privileged communication. *See Sheets Depo.*, pp. 56, 61, 64-65, 90-91; *Denman*, 2007 U.S. Dist. LEXIS 70090, at *17 (stating that there is no implied waiver when the statements purportedly constituting waiver do not disclose the contents of the specific privileged communication).

Accordingly, the *Motion to Compel* disclosure of privileged communication between Superintendent Sheets and counsel is **DENIED**.

**IV.   REQUEST FOR COSTS AND ATTORNEY FEES**

In the *Motion to Compel*, plaintiff seeks an award of her costs and attorney fees incurred in connection with her motion. With some exceptions, Rule 37(a)(5) of the Rules of Civil Procedure requires the payment of expenses associated with the grant of a motion to compel. Because the Court has concluded that the requested discovery is not appropriate, plaintiff is not entitled to such an award. Accordingly, plaintiff's request for costs and attorney fees associated with the *Motion to Compel* is **DENIED**.

**WHEREUPON**, plaintiff's *Motion to Compel*, Doc. No. 17, is **DENIED**.


January 15, 2009                     *s/Norah McCann King*
                                      Norah M$^c$Cann King
                                  United States Magistrate Judge